IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY M. CHAPPELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:03CV514-SRW |
| ) | (WO) |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Mary M. Chappell brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On May 9, 2000, plaintiff filed an application for disability insurance benefits. On February 15, 2002, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on March 28, 2002, in which he found that plaintiff has severe impairments of fibromyalgia, hypertension and arthritis of the back; that she retains the residual functional capacity to perform all work-related activities at the light exertional level that do not require the climbing of ladders,

ropes, or scaffolds; and that she is able to perform her past relevant work as a homemaker. On March 10, 2003, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that: (1) the ALJ erred by failing to take testimony from a vocational expert; (2) the ALJ failed to consider plaintiff's moderately severe to severe pain when assessing her residual functional capacity;

(3) the ALJ erred in assessing plaintiff's credibility; and (4) the ALJ did not consider the combination of plaintiff's impairments.[1]

### Evaluation of Plaintiff's Subjective Complaints

At the administrative hearing, plaintiff testified to disabling pain and other symptoms. She testified that, on a typical day, she gets up at around 6:00 or 6:30, she drinks some coffee and lets her dog out. (R. 46). She stated, "[T]hen I either lay back down or sit in the recliner and I don't do anything until it's time to fix supper [at around 6:00]. Id. She testified that whether she prepares a full meal depends on how she feels. Id. She stated that she doesn't see anybody and doesn't go anywhere "except where I have to." Id. She testified, *inter alia*, that she has severe migraines once every month "or every couple of months," has irritable bowel syndrome ("two or three spells in the last couple of months"), cries a lot, is nervous and upset any time that she has to "be around people," is unable to stand for longer than "a couple hours or so," has to sit down after washing dishes for fifteen minutes, and can sit for "an hour or so," but that it is "real painful" in her back. (R. 39-45). Plaintiff argues that the ALJ erred in assessing her credibility and failed to articulate sufficient reasons for rejecting her subjective complaints.

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective

---

[1] Plaintiff has waived any issue not specifically identified and addressed in her brief. (See Order, Doc. # 2, ¶ 2)(requiring *specific* identification of issues and advising that issues not properly identified will not be considered by the court); id. at p. 2 n. 1 ("[G]eneral statements of issues such as 'the ALJ's decision is not supported by substantial evidence' will not be considered by the court.").

medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  "The standard also applies to complaints of subjective conditions other than pain." Holt, *supra*, 921 F.2d at 1223.  If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms.  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id.  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[2]  "The credibility determination does not need to cite ""'particular phrases or formulations'" but it cannot merely be a broad rejection which is '"not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's]

---

[2] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

4

medical condition as a whole.'""" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

In the present case, the ALJ correctly articulated the standard for evaluation of subjective complaints of pain and other symptoms. He then indicated a number of reasons for his finding that the evidence does not support plaintiff's allegation of pain and functional limitations to the degree alleged. (R. 16-17).

The ALJ cited the pulmonary function study performed on March 12, 1999, which revealed only mild chronic obstructive pulmonary disease (R. 181) and the February 16, 1999 examination by Dr. Pratt, in which he found no etiology for plaintiff's right hemi-body pain and indicated that plaintiff had minimal shortness of breath. See R. 163 (chest discomfort associated with feeling "minimally breathless'); see also R. 167 ("minimal dyspnea with activity"). The ALJ further relied on the October 1, 2001 report of Dr. Woodling that plaintiff had only "mild temporal artery tenderness," and "moderate trapezius and scapula tenderness," and that her motor functioning was within normal limits. (R. 298). He noted plaintiff's unremarkable CT scans and her carotid ultrasound showing "mild atheromatous disease with no flow significant lesions identified," both in September 2000 (R. 242-45). In a May 31, 2001 examination cited by the ALJ, plaintiff described the pain in her right side as aggravated by driving and sitting up, but as intermittent and mild to moderate. (R. 285).[3] The ALJ noted that, in a May 31, 2000 examination by Dr. Maddox, the plaintiff denied chest pain, neck pain, abdominal pain, back pain, muscle cramps, dizziness, vertigo, clumsiness, or parathesis, and the examination revealed no evidence of muscle spasms,

---

[3] The ALJ cites this document by exhibit and page number, but incorrectly identifies the date of the examination as March 31, 2001.

muscle atrophy, perivertebral spasms, hyperesthesia, or neuropathy, and there was no weakness detected neurologically. (R. 240). The ALJ further noted that plaintiff's subjective complaints are undermined by the comprehensive examinations and findings reported by Dr. Maddox in Exhibit 7. See *e.g.* R. 241 (moderately severe headache alleviated by Goody powders); R. 240 (comprehensive physical exmination noting, *inter alia*, that no abnormal mood or affect were detected); R. 234-36 (plaintiff complained of sudden onset of numbness and tingling of the left side of her face and left arm weakness; reportingdetailed findings of comprehensive examination; concluding "normal physical exam without obvious neurological defect [sic] on exam").

The ALJ also determined that plaintiff's own reports of her daily activities are not consistent with her allegations of disabling pain and functional limitations. (R. 16). The ALJ specifically cited plaintiff's report of her activities to Dr. Brantley, the consultative examiner. Dr. Brantley states:

> On an average Saturday, Mrs. Chappell arises between 7:30 and 8 a.m., has breakfast and spends the morning drinking coffee and watching television shows. She has lunch around noon, if she eats at all, and usually goes to town and shops in the afternoon if she feels like it. She has supper by 5:30 p.m. She and her husband often eat out in the evening or come home and watch TV. She bathes before going to bed around midnight. On the Elavil, she sleeps fine. Appetite is reported to be normal. She takes care of the household chores and shares the heavier ones with her husband. She pays the bills. Leisure skills consist of infrequent attendance of the Mount Gilead Church, pop, country and gospel music' satellite TV shows, crocheting when her hands don't hurt, going for walks, eating out, and her pet dog.

(R. 252). The record also contains plaintiff's "daily activities questionnaire." (R. 118-120). In this report, plaintiff states that she has disabling pain, depression, and panic attacks.

6

However, she also reports that she leaves her home three times a week to go to the doctor, to buy groceries or to visit her aunt at the nursing home. (R. 120). When she goes out, she drives a car. Id. Although she states that she doesn't "get around very many people," she "get[s] along good with people when she is around them." Id. She takes care of her mother, and drives her to the doctor, to the grocery store, and "anywhere else she needs to go." Id. Plaintiff indicates that she cooks "when [her] arm and hand allows [her] to." R. 119. She performs the household chores of "cleaning, dusting, and laundry" but when her pain is bad, her husband mops for her and carries the laundry to the utility room. Id. She tries to go for a short walk each day and to "do a lot of crocheting." Id. She watches television for 4-5 hours at a time and can remember what she sees. Id.

     The court concludes that the ALJ properly applied the pain standard and that the reasons he articulated for discrediting plaintiff's subjective complaints of pain and other symptoms are adequate and supported by substantial evidence. Cf. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)(upholding ALJ's credibility determination in a fibromyalgia case where the ALJ did not rely only on the lack of objective findings, but also on "the inconsistencies between [plaintiff's] descriptions of her diverse daily activities and her claims of infirmity"); Hennes v. Commissioner of Social Security Administration, 130 Fed. Appx. 343 (11th Cir. May 3, 2005)(unpublished opinion)(finding that ALJ properly applied the pain standard and that her determination was supported by substantial evidence where the medical evidence did not confirm the severity of the alleged pain arising from plaintiff's fibromyalgia or obesity, and she had "failed to present objective evidence showing

that these conditions were of such severity that they reasonably could be expected to give rise to the alleged pain," and where "the degree of [plaintiff's] complaints also were belied by her testimony that she could shop for groceries and cook meals with her husband, put clothing in the washing machine, fold and hang clothing, and crochet").

Combination of Impairments

"Where a claimant has alleged several impairments, the [Commissioner] has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." Jones v. Dept. of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991). Plaintiff contends that the Commissioner erred by failing to properly consider the combination of plaintiff's impairments. In Wilson v. Barnhart, 284 F.3d 1219, 1244 (11th Cir. 2002), the Eleventh Circuit held that an ALJ's statement that "'the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment,' but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4'" was "evidence that he considered the combined effects of Wilson's impairments." (alterations and emphasis in original). The Eleventh Circuit rejected the District Court's determination that the ALJ had failed to discuss the cumulative effects of the plaintiff's impairments. In the present case, the ALJ likewise found that the plaintiff does not have an impairment "or a combination of impairments" listed in or medically equal to one in Appendix 1, Subpart P of Regulation No. 4. (R. 17, Finding no. 3). This statement constitutes evidence that the ALJ considered plaintiff's impairments in combination and,

thus, plaintiff's argument to the contrary is without merit.

## Residual Functional Capacity

Plaintiff's argument that the ALJ improperly assessed her residual functional capacity rests primarily on her contention that he "failed to consider moderately severe to severe pain [] when assessing this claim." (Plaintiff's brief, p. 7). For the reasons set forth above, the court concludes that the ALJ's determination that plaintiff's complaints of disabling pain are not credible is supported by substantial evidence.

The plaintiff also argues that "in assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" (Plaintiff's brief, p. 7). Although plaintiff provided no further clarification of this argument, it appears that her complaint may be that the ALJ failed to discuss all of her alleged impairments. However, it appears from the ALJ's decision that the ALJ properly considered all of the evidence and that he evaluated plaintiff's medical condition as a whole, considering all of her physical and mental infirmities to the extent they were supported by the record. See Hennes, *supra*, 130 Fed. Appx. at 348 n. 11)("Although the ALJ did not specifically address how Hennes's obesity affected her subjective complaints of pain and, ultimately, her RFC, we recently have reiterated that 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole."'")(quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). The ALJ's assessment of

plaintiff's residual functional capacity is supported by substantial evidence.

## Vocational Expert Testimony

Plaintiff argues that the ALJ erred by failing to hear testimony from a vocational expert.[4] However, the ALJ rendered a step four decision, concluding that plaintiff retained the residual functional capacity to perform her past relevant work as a homemaker. (R. 18). A step four decision may be based on a determination that "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61. "The Dictionary of Occupational Titles (DOT) descriptions can be relied upon – for jobs that are listed in the DOT – to define the job as it is usually performed in the national economy." Id.

The ALJ based his decision on the job description for "homemaker" found in DOT § 309.354-010.[5] (R. 18). The claimant bears the burden of showing that she is unable to perform her past relevant work. See Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991)(citing Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990)); see also Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)("[The social security] regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."). Plaintiff failed to demonstrate that the

---

[4] She also states that her representative was "not allowed" to examine the vocational expert who appeared at the hearing. (Plaintiff's brief, pp. 6-7 n. 1). However, the hearing transcript reveals that the representative did not ask to question the vocational expert. (R. 46).

[5] Plaintiff does not challenge this description as being inapplicable, and it is apparent from plaintiff's statements regarding her job as a "homemaker" for the Department of Human Resources (R. 33, 114) that the ALJ chose the correct DOT job description.

requirements of the position of homemaker, as performed in the national economy,[6] are not within her residual functional capacity.  The ALJ's step four decision is supported by substantial evidence, and he was not required to hear testimony from a vocational expert. See Lucas, *supra*, 918 F.2d at 1573 n. 2 ("[B]ecause the ALJ concluded that she is capable of performing her past relevant work, testimony from a vocational expert was not necessary."); Lewis v. Barnhart, 353 F.3d 642 (8th Cir. 2001)("Vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work.").

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

Done, this 2nd day of March, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

[6] See "Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles," U.S. Department of Labor (1993) at p. 381.